UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILE DIVISION
COURT FILE NO.: 5:16-CV-170

| | |
|---|---|
| AMBER KEUMURIAN<br><br>Plaintiff<br><br>v.<br><br>MASSACHUSETTS BOARD OF HIGHER EDUCATION, DELTA MANAGEMENT ASSOCIATES, Inc., FINANCIAL ASSET MANAGEMENT SYSTEMS, Inc., PREMIER CREDIT OF NORTH AMERICA, Inc. and COLLECTO Inc. d/b/a EOS CCA<br><br>Defendants | COMPLAINT<br>WITH DEMAND FOR JURY TRIAL |

**COMES NOW** the Plaintiff, Amber Keumurian, by and through counsel and brings this complaint, in support of which she respectfully shows this Court the following:

### PRELIMINARY STATEMENT

1. This is an action for damages pursuant to 47 U.S.C. §227 *et seq.*, the Telephone Consumer Protection Act (TCPA), N.C. Gen. Stat. §§ 75-1.1. and 58-70-90 et. seq., and in the alternative N.C. Gen. Stat. § 75-50, *et seq.*,

### JURISDICTION AND VENUE

2. Jurisdiction of this this Court is proper pursuant to 28 U.S.C. §§1331 and 1367.

3. This action seeks redress for the unlawful and deceptive practices committed by the Defendants in connection with their efforts to collect a debt. Plaintiff seeks relief based on Defendants' violations of, North Carolina General Statutes §§ 58-70-90, et seq., 75.1-1 and in the alternative N.C. Gen. Stat. § 75-50, *et seq*.; and 47 United States Code § 227.

4. Venue lies properly in this district pursuant to 28 U.S.C. §1391(b)(2).

**PARTIES**

5. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

6. Plaintiff is a "consumer" as defined by N.C. Gen. Stat. § 58-70-90(2).

7. Plaintiff is a "consumer" as defined by N.C. Gen. Stat. § 75-50(1).

8. Massachusetts Board of Higher Education (MBHE) is the statutorily created agency in Massachusetts responsible for defining the mission of and coordinating the Commonwealth's system of public higher education and its institutions.

9. MBHE regularly conducts business nationally, and has its principal place of business at One Ashburton Place, Room 1401, Boston, Massachusetts 02108.

10. Collecto, Inc., dba EOS CCA (CCA) is a business entity which regularly conducts business nationally, and has its principal place of business at 700 Longwater Dr., Norwell, Massachusetts, 02061.

11. Delta Management Associates, Inc. (DMA) is a business entity which regularly conducts business nationally, and has its principal place of business at 100 Everett Ave Suite 6, Chelsea, Massachusetts 02150-2328.

12. Financial Asset Management Systems, Inc. (FAMS) is a business entity which regularly conducts business nationally, and has its principal place of business at 1967 Lakeside Pkwy Suite 402 Tucker, Georgia 30084.

13. Premiere Credit of North America, Inc. (PCNA) is a business entity which regularly conducts business nationally, and has its principal place of business at 2002 Wellesley Blvd., Indianapolis, Indiana 46219-2417.

2

14. At all times relevant to this action, MBHE was engaged in commerce in North Carolina.

15. At all times relevant to this action, CCA was engaged in commerce in North Carolina.

16. At all times relevant to this action, DMA was engaged in commerce in North Carolina.

17. At all times relevant to this action, FAMS was engaged in commerce in North Carolina.

18. At all times relevant to this action, PCNA was engaged in commerce in North Carolina.

19. Defendant MBHE is a "debt collector" as defined as defined by N.C. Gen. Stat. § 75-50(3).

20. Defendant MBHE regularly attempts to collect debts alleged to be due another.

21. Defendant CCA is a "collection agency" as defined as defined by N.C. Gen. Stat. § 58-70-90(1).

22. Defendant CCA regularly attempts to collect debts alleged to be due another.

23. Defendant DMA is a "collection agency" as defined as defined by N.C. Gen. Stat. § 58-70-90(1).

24. Defendant DMA regularly attempts to collect debts alleged to be due another.

25. Defendant FAMS is a "collection agency" as defined as defined by N.C. Gen. Stat. § 58-70-90(1).

26. Defendant FAMS regularly attempts to collect debts alleged to be due another.

27. Defendant PCNA is a "collection agency" as defined as defined by N.C. Gen. Stat. § 58-70-90(1).

28. Defendant PCNA regularly attempts to collect debts alleged to be due another.

29. The alleged debt that is relevant to this cause of action is a "debt" as defined by N.C. Gen. Stat. § 58-70-90(3).

30. The alleged debt that is relevant to this cause of action is a "debt" as defined by N.C. Gen. Stat. § 75-50(2).

31. The alleged debt at issue arose out of a transaction that was primarily for personal, family or household purposes.

32. MBHE used an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1) in the collection of the alleged debt.

33. There was no "established business relationship" between Plaintiff and MBHE as defined by 47 U.S.C. § 227(a)(2).

34. CCA used an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1) in the collection of the alleged debt.

35. There was no "established business relationship" between Plaintiff and CCA as defined by 47 U.S.C. § 227(a)(2).

36. DMA used an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1) in the collection of the alleged debt.

37. There was no "established business relationship" between Plaintiff and DMA as defined by 47 U.S.C. § 227(a)(2).

38. FAMS used an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1) in the collection of the alleged debt.

39. There was no "established business relationship" between Plaintiff and FAMS as defined by 47 U.S.C. § 227(a)(2).

40. PCNA used an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1) in the collection of the alleged debt.

41. There was no "established business relationship" between Plaintiff and PCNA as defined by 47 U.S.C. § 227(a)(2).

## FACTUAL ALLEGATIONS

42. October 28, 2002: Plaintiff borrowed $3,500 from the Commonwealth of Massachusetts as a student loan. The loan was used for educational purposes as well as living expenses.

43. This loan was regularly serviced by MBHE.

44. May 2003: Plaintiff graduated from Fitchburg State College.

45. May 2003: After graduating the Plaintiff paid $500 of the alleged loan amount.

46. August 15, 2006: Plaintiff received the last communication regarding her debt from ACS Education Services. The bill shows a total amount owed of $3,000 and a 0% interest rate. (Exhibit A)

47. August 27, 2006: Plaintiff filed with ACS a Deferment Request Form which requested deferment in payments from January 1, 2006, until January 1, 2009. (Exhibit B)

48. Plaintiff was eligible for this deferment when it was requested.

49. Plaintiff later consolidated her student loans. Through inadvertence, Plaintiff assumed that all of her loans were consolidated. However, the alleged loan which is the subject of this lawsuit was not consolidated with the other loans.

50. Plaintiff did not receive further statements on the alleged loan after the consolidation.

5

51. January 22, 2010: Plaintiff pulled her credit report and discovered that this loan was still being reported as a separate, and now allegedly delinquent, loan. (EXHIBIT C)

52. 2010: Plaintiff contacted Massachusetts Board of Higher Education (MBHE) and was told the account was sent to collections. MBHE would not give Plaintiff the contact information of the collection company.

53. Plaintiff had previously been contacted by Windham Professionals in an attempt to collect the debt. Plaintiff wanted to pay off the debt completely but could not determine who was collecting at the time.

54. Plaintiff sent a check for $10.00 to Windham Professionals in an attempt to locate the party to whom she should make payments.

55. July 13, 2010: Windham Professionals replied in a letter to Plaintiff stating that they were no longer servicing the account and that the check was forwarded to MBHE. (Exhibit D)

56. July 22, 2010: MBHE replied to Plaintiff in a letter and stated that the account was placed with "Collection Company of America" (sic). Contact information for CCA was given and the Plaintiff's check was returned. (Exhibit E)

57. July, 2010: Plaintiff called CCA. Plaintiff eventually spoke with "Mary Rose" of CCA at phone number (781) 753-4102 extension 14108, who insisted on payment of the loans in their entirety.

58. Based on the contract for the loan, the debt neither carried interest nor required any minimum payment. (Exhibit A)

59. CCA refused to take a payment by check and insisted that Plaintiff allow them to draft the payment directly from her bank account.

60. CCA also threatened garnishment of Plaintiff's wages.

61. July, 2010: Counsel contacted "Mary Rose" with CCA. Counsel explained to her that the loan was a no-interest loan that it was illogical to expect full payment, and that Plaintiff would submit a partial payment by check on a monthly basis to CCA. Counsel clearly informed CCA that he represented Plaintiff on the alleged debt.

62. July 2010 – April 2011: Plaintiff made payments this way for several months totaling $1,050. Plaintiff wrote two checks that CCA never cashed.

63. Together with the May 2003 payment and the checks to CCA the Plaintiff had repaid $1,550 of the loan.

64. As time passed, CCA would take longer and longer to cash Plaintiff's checks until finally the last two checks were never cashed. These were checks #1239 written on March 13, 2011 and #1247 written on March 29, 2011. (Exhibit F)

65. At that point, Plaintiff moved forward with submitting the payment in full.

66. Upon information and belief, at this time, "Mary Rose" was being transferred to another department and Plaintiff's file was re-assigned to "Mike Bennet" of CCA at phone number (781) 753-4102 extension 14108.

67. The Plaintiff verified over the phone repeatedly with "Mary Rose" and "Mike Bennett" that the total due for both no-interest loans (original loans: $1,000.00 & $2,000.00) was $1968.00, and that paying this amount would settle the debt.

68. May 16, 2011: CCA sent Plaintiff an invoice which demonstrates that there was a principal balance of $1,968 due on the account with $0.00 due for Interest, and $0.00 due for Fees/Coll Costs. (Exhibit G)

69. August 15, 2011: Plaintiff mailed a check with certified return receipt for the remaining $1968.00 balance. (Exhibit H)

70. August 23, 2011: Check 1299 was cashed. (Exhibit I [bank statement] & Exhibit J [duplicate check])

71. Upon information and belief, MBHE or CCA sold or otherwise transferred or referred Plaintiff's account to DMA despite knowing that the debt was paid in full.

72. Upon information and belief, DMA began to collect against Plaintiff while knowing that the debt was paid in full.

73. DMA did not have any prior existing relationship with the Plaintiff.

74. DMA did not have express permission from the Plaintiff to contact her cellular telephone by using automated telephonic dialing equipment to collect a debt.

75. Despite not having this permission, DMA contacted Plaintiff many times on her cellular telephone by using automated telephonic dialing equipment to collect the alleged debt.

76. October 25, 2012, 8:59 a.m.: Plaintiff received a debt collection call from "Beth" with DMA from phone number (800) 688-6337 extension 6443 on her cellular telephone. "Beth" left a voicemail which the Plaintiff has saved.

77. October 31, 2012, 1:41 p.m.: Plaintiff received a debt collection call from "Eileen" of DMA from phone number (800) 688-6337 on her cellular telephone. "Eileen" left a voicemail which the Plaintiff saved.

78. November 6, 2012, 1:03 p.m.: Plaintiff received a debt collection call from "Wanda" of DMA from phone number (800) 688-6337 extension 6441 on her cellular telephone. "Wanda" left a voicemail which the Plaintiff saved.

79. November 7, 2012: Plaintiff placed a call to DMA at the number left on her voicemail. When the Plaintiff asked about "Wanda" the Defendant said they did not know who she was and that the Plaintiff would have to wait until DMA called her back again to ask who was calling. Plaintiff told DMA not to call her again, gave counsel's information to DMA and ended the phone call.

80. November 12, 2012, 4:04 p.m.: Plaintiff received a debt collection call from "Andi" from phone number (617) 660-3256 on her cellular telephone. "Andi" did not identify who she represented or why she was calling. Upon information and belief this call was from DMA. "Andi" left a voicemail which the Plaintiff saved.

81. December 3, 2012, 3:59 p.m.: Plaintiff received a debt collection call from "Eileen" of DMA from phone number (800) 688-6337 extension 644[0?]. "Eileen" left a voicemail which the Plaintiff saved.

82. March 19, 2013, 2:15 p.m.: Plaintiff received a debt collection call from "Patrick Davis" of DMA from phone number (603) 285-6442. "Patrick" left a voicemail which Plaintiff saved.

83. Upon information and belief, MBHE or DMA sold or otherwise transferred or referred Plaintiff's account to FAMS despite knowing that the debt was paid in full.

84. Upon information and belief, FAMS began to collect against Plaintiff while knowing that the debt was paid in full.

85. FAMS did not have any prior existing relationship with the Plaintiff.

86. FAMS did not have express permission from the Plaintiff to contact her cellular telephone by using automated telephonic dialing equipment to collect a debt.

87. Despite not having this permission, FAMS contacted Plaintiff many times on her cellular telephone by using automated telephonic dialing equipment to collect the alleged debt.

88. March 23, 2013, 11:24 a.m.: Plaintiff received a debt collection call from Financial Asset Management Systems from phone number (800) 451-4245. The called left a voicemail which Plaintiff saved.

89. April 17, 2013, 8:50 a.m.: Plaintiff received a debt collection call from FAMS from phone number (800) 451-4245. The called left a voicemail which Plaintiff saved.

90. February 9, 2014: Plaintiff received a debt collection letter from FAMS. (Exhibit K)

91. Upon information and belief, MBHE or FAMS sold or otherwise transferred or referred Plaintiff's account to PCNA despite knowing that the debt was paid in full.

92. Upon information and belief, PCNA began to collect against Plaintiff while knowing that the debt was paid in full.

93. March 6, 2014: Plaintiff received a debt collection letter from PCNA. (Exhibit L)

94. March 14, 2014: Plaintiff received a debt collection letter from PCNA. (Exhibit M)

## V. **N. C. Gen. Stat. § 58-70-90,** *et seq.*

95. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

96. Defendant MBHE has communicated with successive debt collectors or collection agencies that the Plaintiff has not paid the alleged debt even though it was paid in full.

10

97. All Defendants as debt collectors or collection agencies have communicated with the next successive debt collector or collection agency that the Plaintiff has not paid the alleged debt even though it had been paid in full.

98. Every instance of this behavior is a general violation of N.C. Gen. Stat. § 58-70-95 which states that "*No collection agency shall collect or attempt to collect any debt alleged to be due and owing from a consumer by means of any unfair threat, coercion, or attempt to coerce.*"

99. Every instance of this behavior is a violation of N.C. Gen. Stat. § 58-70-95(3) which prohibits "*Making or threatening to make false accusations to another person, including any credit reporting agency, that a consumer has not paid, or has willfully refused to pay a just debt.*"

100. CCA threatened garnishment of Plaintiff's wages for the alleged debt. Since the Plaintiff did not owe any debt, CCA could not garnish Plaintiff's wages.

101. Every instance of this behavior is a N.C. Gen. Stat. § 58-70-95(6) which prohibits "*Representing that nonpayment of an alleged debt may result in the seizure, garnishment, attachment, or sale of any property or wages unless such action is in fact contemplated by the debt collector and permitted by law.*"

102. All Defendants have repeatedly attempted to collect a debt which they all knew was not owed by the Plaintiff with the intent of coercing her to pay money to make the cumulative effect of the collections stop.

103. Every instance of this behavior is a general violation of N.C. Gen. Stat. § 58-70-100 which states that "*No collection agency shall use any conduct, the natural*

11

Case 5:16-cv-00170-RLV-DSC   Document 1   Filed 09/23/16   Page 11 of 20

97. All Defendants as debt collectors or collection agencies have communicated with the next successive debt collector or collection agency that the Plaintiff has not paid the alleged debt even though it had been paid in full.

98. Every instance of this behavior is a general violation of N.C. Gen. Stat. § 58-70-95 which states that "*No collection agency shall collect or attempt to collect any debt alleged to be due and owing from a consumer by means of any unfair threat, coercion, or attempt to coerce.*"

99. Every instance of this behavior is a violation of N.C. Gen. Stat. § 58-70-95(3) which prohibits "*Making or threatening to make false accusations to another person, including any credit reporting agency, that a consumer has not paid, or has willfully refused to pay a just debt.*"

100. CCA threatened garnishment of Plaintiff's wages for the alleged debt. Since the Plaintiff did not owe any debt, CCA could not garnish Plaintiff's wages.

101. Every instance of this behavior is a N.C. Gen. Stat. § 58-70-95(6) which prohibits "*Representing that nonpayment of an alleged debt may result in the seizure, garnishment, attachment, or sale of any property or wages unless such action is in fact contemplated by the debt collector and permitted by law.*"

102. All Defendants have repeatedly attempted to collect a debt which they all knew was not owed by the Plaintiff with the intent of coercing her to pay money to make the cumulative effect of the collections stop.

103. Every instance of this behavior is a general violation of N.C. Gen. Stat. § 58-70-100 which states that "*No collection agency shall use any conduct, the natural*

*consequence of which is to oppress, harass, or abuse any person in connection with the attempt to collect any debt.*"

104. All Defendants placed the alleged debt with successive collection agencies or debt collectors with the intent that the accumulating collection activities would cause the Plaintiff to pay the alleged debt even though it was not owed.

105. Every instance of this behavior is a violation of N.C. Gen. Stat. § 58-70-100(3) which prohibits "*Causing a telephone to ring or engaging any person in telephone conversation with such frequency as to be unreasonable or to constitute a harassment to the person under the circumstances...*"

106. Defendant DMA made at least one collection call without identifying who the caller was.

107. Every instance of this behavior is a violation of N. C. Gen. Stat. § 58-70-100 (2) which prohibits "*Placing collect telephone calls or sending collect telegrams unless the caller fully identifies himself and the company he represents.*"

108. All Defendants represented to Plaintiff that she owed debt which she did not owe in an attempt to make her pay the alleged debt.

109. Every instance of this behavior is a violation of N.C. Gen. Stat. § 58-70-110(4) which prohibits "*Falsely representing the character, extent, or amount of a debt against a consumer or of its status in any legal proceeding.*"

110. Plaintiff's counsel notified CCA in 2010 that he represented Plaintiff on this debt.

111. CCA was acting as collection agent for MBHE and MBHE is accountable for the knowledge that Plaintiff was represented on this debt.

12

112. Every debt collector on this debt subsequent to CCA is accountable for the knowledge that Plaintiff is represented by counsel on this debt.

113. CCA and all subsequent debt collectors continued to contact Plaintiff and not Plaintiff's counsel in the collection of this alleged debt.

114. Every instance of this behavior is a general violation of N.C. Gen. Stat. § 58-70-115 which states that "*No collection agency shall collect or attempt to collect any debt by use of any unfair practices.*"

115. CCA and all subsequent debt collectors continued to collect after Plaintiff's attorney communicated with the CCA that he represented her on this debt.

116. Every instance of this behavior is a specific violation of N.C. Gen. Stat. § 58-70-115(3) which prohibits *"Communicating with a consumer whenever the collection agency has been notified by the consumer's attorney that he represents said consumer."*

117. Defendants collected against the Plaintiff when any reasonable inquiry into the Defendants' own records would show that Plaintiff had paid the alleged debt.

118. Each such instance of this behavior is a violation of N.C. Gen. Stat. § 58-70-115(5) which prohibits "*When the collection agency is a debt buyer or acting on behalf of a debt buyer… attempting to collect on the debt without (i) valid documentation that the debt buyer is the owner of the specific debt instrument or account at issue and (ii) reasonable verification of the amount of the debt allegedly owed by the debtor.*"

13

119. Defendants' conduct was a direct and proximate cause, as well as a substantial factor, in bringing about the damages to the Plaintiff that are outlined more fully above.

120. Defendants' acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of coercing Plaintiff to pay monies relating to a discharged debt.

121. As a result of Defendants' violations of N.C. Gen. Stat. § 58-70-90, *et seq.*, Defendant is liable to Plaintiff pursuant to N.C. Gen. Stat. § 58-70-130(a) which states that "*[a]ny collection agency which violates Part 3 of this Article with respect to any debtor shall be liable to that debtor in an amount equal to the sum of any actual damages sustained by the debtor as a result of the violation.*"

122. The Defendants are liable to the Plaintiff pursuant to N.C. Gen. Stat. § 58-70-130(b) which states that "*Any collection agency which violates Part 3 of this Article with respect to any debtor shall, in addition to actual damages sustained by the debtor as a result of the violation, also be liable to the debtor for a penalty in such amount as the court may allow, which shall not be less than five hundred dollars ($500.00) for each violation nor greater than four thousand dollars ($4,000) for each violation.*"

123. Plaintiff is entitled punitive damages as well as reasonable attorney's fees and costs pursuant to N.C. Gen. Stat. § 75-16.1 which states that "*[i]n any suit instituted by a person who alleges that the Defendant violated G.S. 75-1.1, the presiding judge may, in his discretion, allow a reasonable attorney fee to the duly licensed attorney representing the prevailing party, such attorney fee to be taxed as a part of the court*

*costs and payable by the losing party, upon a finding by the presiding judge that: (1) The party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit…"*.

## N. C. Gen. Stat. § 75-50, *et seq*.

124. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

125. Defendant MBHE repeatedly attempted to collect a debt which it knew was not owed by the Plaintiff with the intent of coercing her to pay money to make the cumulative effect of the collections stop.

126. Every instance of this behavior is a violation of N.C. Gen. Stat. § 75-51 which states, "*No debt collector shall collect or attempt to collect any debt alleged to be due and owing from a consumer by means of any unfair threat, coercion, or attempt to coerce*."

127. Defendant MBHE has communicated with successive debt collectors or collection agencies that the Plaintiff has not paid the alleged debt even though it was paid in full.

128. Every instance of this behavior is a violation of N.C. Gen. Stat. § 75-51(3) which prohibits, "*Making or threatening to make false accusations to another person, including any credit reporting agency, that a consumer has not paid, or has willfully refused to pay a just debt*."

129. Defendant MBHE continued to collect on a debt it knew was not valid and then assigned the debt to new collectors with the intent that the accumulating collection

15

activities would cause the Plaintiff to pay the alleged debt even though it was not owed.

130. Every instance of this behavior is a violation of N.C. Gen. Stat. § 75-52 which states that "*No debt collector shall use any conduct, the natural consequence of which is to oppress, harass, or abuse any person in connection with the attempt to collect any debt.*"

131. Defendant MBHE assigned agencies to call Plaintiff many times to collect a debt that was not owed by the Plaintiff.

132. Every instance of this behavior is a violation of N.C. Gen. Stat. § 75-52(3) which prohibits, "*Causing a telephone to ring or engaging any person in telephone conversation with such frequency as to be unreasonable or to constitute a harassment to the person under the circumstances or at times known to be times other than normal waking hours of the person.*"

133. Defendant MBHE, through its agents, told Plaintiff that she owed a debt that she did not owe and that she should pay it.

134. Every instance of this behavior is a violation of N. C. Gen. Stat. § 75-54(4) which prohibits, "*Falsely representing the character, extent, or amount of a debt against a consumer or of its status in any legal proceeding; falsely representing that the collector is in any way connected with any agency of the federal, State or local government; or falsely representing the creditor's rights or intentions.*"

135. Defendant MBHE continued to collect after Plaintiff's attorney communicated with the Defendant that he represented her on this debt.

16

136. Every instance of this behavior is a general violation of N. C. Gen. Stat. § 75-55 which states that "*No debt collector shall collect or attempt to collect any debt by use of any unconscionable means.*"

137. Every instance of this behavior is a violation of N. C. Gen. Stat. § 75-55(3) which prohibits, "*Communicating with a consumer (other than a statement of account used in the normal course of business) whenever the debt collector has been notified by the consumer's attorney that he represents said consumer.*"

138. Defendant MBHE's conduct was a direct and proximate cause, as well as a substantial factor, in bringing about the damages to the Plaintiff that are outlined more fully above.

139. Defendant MBHE's acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of coercing Plaintiff to pay monies relating to a satisfied debt.

140. Defendant MBHE is liable to the Plaintiff as directed by N.C. Gen. Stat. § 75-56(b) which states that "*Any debt collector who fails to comply with any provision of this Article with respect to any person is liable to such person in a private action in an amount equal to the sum of (i) any actual damage sustained by such person as a result of such failure and (ii) civil penalties the court may allow, but not less than five hundred dollars ($500.00) nor greater than four thousand dollars ($4,000) for each violation.*"

141. Defendant MBHE is also responsible for reasonable attorney's fees and costs pursuant to N.C. Gen. Stat. § 75-16.1 which states that "*[i]n any suit instituted by a*

17

*person who alleges that the Defendant violated G.S. 75-1.1, the presiding judge may, in his discretion, allow a reasonable attorney fee to the duly licensed attorney representing the prevailing party, such attorney fee to be taxed as a part of the court costs and payable by the losing party, upon a finding by the presiding judge that: (1) The party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit…"*.

## **47 U.S.C. 227,** *et seq***.**

142. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

143. Upon information and belief, during the time relevant to this Complaint, Defendants called the Plaintiff's cellular telephone by means of an automated dialing system.

144. Prior to the placement of the calls, Plaintiff did not expressly consent to any Defendants placing telephone calls to her cellular telephone by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

145. None of Defendants' telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C § 227 (b)(1)(A).

146. Plaintiff told Defendants on multiple occasions to stop calling her cell phone.

147. Because Defendants had never received permission, when Defendants placed calls to Plaintiff's cellular telephone using an automated telephonic dialing system to collect debt, Defendants willfully or knowingly violated the TCPA.

18

148. Defendants placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or pre-recorded or artificial voice without Plaintiff's prior express consent in violation of 47 U.S.C. § 227 (b)(1)(A)(iii).

**Civil Conspiracy**

149. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

150. Defendants have committed a civil conspiracy against Plaintiff by the following:

a) Defendants committed a wrongful act: they colluded to use the coercive and harassing practices described herein to collect from the Plaintiff a debt that was not owed.

b) Resulting in injury to another: The Plaintiff has endured undue emotional distress and financial and other dignitary injuries as described herein as well as violations of the statutes meant to protect her from such activities.

c) Committed by one or more of the conspirators:

    1. Creditor assigned the alleged debt to the debt collectors or collection agencies.

    2. Creditor and debt collectors or collection agencies knew the debt was not owed.

    3. Each Defendant in turn collected on the same alleged debt though it was not owed.

d) Pursuant to the common scheme: All Defendants wanted the Plaintiff to pay a debt she had already paid and did not owe.

e) And in furtherance of the objective: Defendants wanted the Plaintiff to pay the alleged debt even when she did not owe it; each was unconcerned whether the debt was valid, only that it be paid by the Plaintiff.

151. Because the Defendants engaged in a civil conspiracy based on these and all actions alleged in this complaint Plaintiff suffered damages as enumerated throughout this complaint and is entitled to damages to be determined at trial.

## JURY TRIAL DEMAND

152. Plaintiff demands trial by jury on all issues so triable.

**WHEREFORE**, Plaintiff seeks judgment in Plaintiff's favor and damages against the Defendants, based on the following requested relief:

a) All damages allowed by statute pursuant to N. C. Gen. Stat. §§ 75-1.1, 58-70-90, *et seq.*, and 75-16, and in the alternative, N.C. Gen. Stat. § 75-50, *et seq.*,

b) Costs and reasonable attorney's fees pursuant to N.C. Gen. Stat. § 75-16 and §75-1.1;

c) The greater of actual damages or $500 per violation pursuant to 47 U.S.C. 227(c)(5)(B) and treble damages of $1,500 per violation pursuant to 47 U.S.C. § 227(c)(5)(C).

d) An order directing that Defendants send to all persons and entities to whom they have reported Plaintiff's inaccurate information within the last three years Plaintiff's updated and corrected credit report information; and

e) Such other and further relief as may be necessary, just and proper.

**TODAY** is September 23, 2016.

**COLLUM & PERRY**

By: */s/ M. Shane Perry*
Attorney for Plaintiffs
NC Bar No. 35498
109 W. Statesville Ave., Mooresville, NC 28115
Telephone: 704-663-4187
shane@collumperry.com

20